Criminal Case Template














COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS





JOSE GILBERTO HERRERA,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.

§


§


§


§


§

No. 08-01-00152-CR


Appeal from the


120th District Court


of El Paso County, Texas


(TC# 20000D04821)

 


M E M O R A N D U M O P I N I O N



 This is an appeal from jury convictions for two counts of sexual assault of a child and
five counts of aggravated sexual assault of a child. The jury assessed punishment at twenty
years' imprisonment on the two counts of sexual assault of a child and fifty years'
imprisonment on the five counts of aggravated sexual abuse of a child. We affirm the
judgment of the trial court. 



I. SUMMARY OF THE EVIDENCE


 At Appellant's evidentiary hearing to suppress his confession, Detective Mario
Chaides testified that he met Appellant on February 29, 2000, at the Northeast Regional
Command Center in El Paso, Texas. On that date, Detective Chaides interviewed
Appellant's mother-in-law who complained that Appellant sexually assaulted her
granddaughter, S.H., the victim. At about 11:55 p.m., Appellant drove himself and his wife
to the command center where he was placed under arrest and was read his Miranda rights by
Detective Chaides. Chaides repeated those rights and, one by one, asked if Appellant
understood them. Appellant signed a Miranda card indicating that he understood each right.

 Appellant was then taken into an interview room where he and Chaides discussed the
accusations. At first, Appellant denied that he sexually assaulted S.H. He later recanted in
a written statement taken by Chaides. Chaides typed the statement as Appellant dictated to
him. Chaides then printed out the statement so Appellant could read it and make any changes
he wished. Appellant agreed with the printed statement and signed it at approximately 2:43
a.m. Chaides testified that Appellant never asked for an attorney; if he had done so, he
would have stopped the interview. The witness stated that the statement was given
voluntarily. Detective Max Zimmerly and Officer Bernie Salinas witnessed Appellant sign
the statement. Another detective asked if Appellant wanted to say anything to his daughter
and provided Appellant with a pen and paper, although he was not forced to write to his
daughter. 

 Appellant testified that he understood his rights but that he had asked for an attorney
on two occasions by saying "what about an attorney?" He testified that Chaides said that he
did have a right to an attorney but "he continued on with talking." Appellant testified that
he was told that the complaining witness, his daughter, was pregnant and was on the way to
the hospital. He reasoned at the time that this would prove his innocence because it would
be revealed that he was not the father. Appellant also testified that he was told that his other
children would be taken away from his wife as his wife would become a suspect if he
remained silent. Appellant also testified that Chaides used his handcuffs in a threatening
manner. He testified that he was afforded the opportunity to consult with his wife two or
three times during the interview. Also, he testified that he found the presence of Chaides gun
and his posture to be threatening. 

 In turn, Chaides testified that he did not mention anything about the consequences of
Appellant's statement with regard to what would happen to the wife or the children or that
the wife was under investigation. The detective denied ever mentioning that the complaining
witness was pregnant. Chaides testified that he did not have his handcuffs out while he
interviewed Appellant. 

 The court filed findings of fact and conclusions of law. The court found that no
threats were made by the detectives with regard to the letter Appellant wrote to the
complaining witness. The court further found that Appellant received the appropriate
warnings and that Appellant did not invoke his right to an attorney, his right to remain silent,
or his right to terminate the interview at any time. It was found that Appellant knowingly,
intelligently, and voluntarily waived his rights. Further, the court found that Chaides did not
promise any leniency or good result regarding the reunification of his family as a result of
providing a statement or giving a letter. Also no force or threats were utilized in obtaining
the statement. The court suppressed the letter as not comporting the statutory requisites
while allowing its use for possible impeachment purposes. 

 Trial commenced on March 5, 2001. At trial, the complainant, who was seventeen
years old at the time of trial, testified regarding a series of sexual assaults by her father,
Appellant, that began when she was approximately seven or eight years old. Defense counsel
established that there were positive things in the complainant's life such as school and church
activities notwithstanding her assertions that she was being sexually assaulted during this
time. She testified that she never told anyone about the sexual incidents because Appellant
told her that he would kill her and anyone she told. During cross-examination, the
complainant was asked if she told a nurse that she was not sexually active during an
examination in 1999. She stated she did not remember the conversation but she did state that
she would have been lying to the nurse if she denied being sexually active. She was asked
what the term "virgin" meant and she related that was someone who had not had sex. She
stated that she had not had sex with anyone prior to February 1999. 

 The complainant testified that she wrote about the assaults in her diaries or journals. 
Someone found them and tore them up and she stopped writing journals three or four years
prior to trial. She was confronted with a journal she had written a year earlier in 1999, and
she admitted having lied about not continuing to write the journals. She read from a journal
entry from October 15, 1999 which stated, "Tonight Larry wanted me to come over to his
house so we could spend some time together." He was her boyfriend at the time and she
admitted that she wrote in the journal, "We had sex" and "I am not a virgin anymore." 
Defense counsel moved to admit the complainant's three journals and this request was
denied. She agreed that she did not write anything in the journals about her father sexually
abusing her. When asked, the complainant stated that she did not know that her parents were
considering moving the family to Albuquerque. 

 Outside the presence of the jury, the court ruled that Appellant could cross-examine
the complainant concerning the October 15 entry because her understanding of the term
"virgin" was important to the defensive theory that she lost here virginity to her boyfriend
and therefore was never assaulted by her father. The court ruled that the other entries were
not relevant. Appellant then requested to cross-examine the complainant concerning a
September 11, 1999 entry where she wrote that the only person she would have sex with was
"Ricky." The court denied this request as being a collateral matter not relevant to whether
or not her father sexually assaulted her. In front of the jury, the complainant testified fully
regarding the October 15 incident. 

II. DISCUSSION


 In Issue No. One, Appellant asserts that the trial court erred in denying his motion to
suppress his confession because of his invocation of the right to counsel. Appellant argues
that his requesting phrase, "what about a lawyer?" should be held equivalent to "I think I
want a lawyer" which was held sufficient enough to invoke a person's right under the Fifth
Amendment to invoke the right to counsel in Jones v. State, 742 S.W.2d 398 (Tex. Crim.
App. 1987). 

 We review the trial court's decision on a motion to suppress under an abuse of
discretion standard. See Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996).
When there is conflicting evidence about whether a confession was voluntary, the trial court
is the sole judge of facts at the suppression hearing, and an appellate court may not disturb
any finding supported by the evidence. Dunn v. State, 721 S.W.2d 325, 336 (Tex. Crim.
App. 1986). Whether a confession is voluntary is a mixed question of law and fact. Garcia
v. State, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). Appellate courts should give almost
absolute deference to trial court determinations of historical fact supported by the record,
especially when those findings are based on an evaluation of credibility and demeanor.
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Appellate courts should afford
the same amount of deference to trial court rulings on mixed questions of law and fact when
the resolution of those ultimate issues turns on an evaluation of credibility and demeanor. 
Id. However, an appellate court may review de novo mixed questions of law and fact that
do not fit within that category. Id. In the instant case, the trial court's ruling at the
suppression hearing was based on its evaluation of the credibility and demeanor of Appellant
and Chaides. Therefore, we afford almost complete deference to the trial court's ruling. A request for counsel must be unambiguous, meaning the suspect must "articulate his
desire to have counsel present sufficiently clearly that a reasonable police officer in the
circumstances would understand the statement to be a request for an attorney." Davis v.
United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994). If the suspect's
statement is not an unambiguous or unequivocal request for counsel, the officers have no
obligation to stop questioning him. Id. at 460-61. Whether a suspect has unequivocally
requested an attorney depends on whether he expressed a definite desire to speak to someone,
and that person be an attorney. Dinkins v. State, 894 S.W.2d 350 (Tex. Crim. App. 1995). 
Once an accused invokes his right to counsel, interrogation must cease until counsel has been
made available, unless the accused himself initiates further communication. Minnick v.
Mississippi, 498 U.S. 146, 151-52, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990). In Dinkins, the
phrase, "'Maybe I should talk to a lawyer'" had been held too equivocal to constitute an
invocation of the right to counsel. Id. at 352. However, the statement, "'I think I want a
lawyer'" was held to be a clear and unequivocal assertion of right to counsel. Id. In a more
recent case, the appellate court in Fort Worth held that merely asking an officer if an attorney
could be present did not constitute a clear and unambiguous invocation of the right to
counsel. Halbrook v. State, 31 S.W.3d 301, 304 (Tex. App.--Fort Worth 2000, no pet.). 

 Detective Chaides testified both at the suppression hearing that Appellant never asked
to speak with an attorney. He further said that had Appellant requested an attorney he would
have stopped the interview. Appellant testified that he understood his rights. Appellant also
said that he asked twice: "what about an attorney?" but that the detective, "just went on
talking." Appellant made no changes to the printed copy of his confession and admitted that
he knew he could have stopped the interview anytime. The trial court was in a position to
judge and weigh the credibility of the witnesses and chose to believe the detective. State v.
Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). Its finding is supported by the record and
may not be disturbed absent an abuse of discretion. Cantu v. State, 817 S.W.2d 74, 77 (Tex.
Crim. App. 1991).

 Further, even if the trial court chose to believe that Appellant said, "what about an
attorney?," case law does not support Appellant's contention that those words suffice for a
request of counsel. Once a suspect invokes his Fifth Amendment right to counsel, he cannot
be further interrogated by law enforcement officers until counsel has been provided or the
suspect initiates further communication with the police. Edwards v. Arizona, 451 U.S. 477,
484-85, 101 S.Ct. 1880, 1884-85, 68 L.Ed. 2d 378 (1981); Green v. State, 934 S.W.2d 92,
97 (Tex. Crim. App. 1996). As stated, the mere mention of the word "attorney" or "lawyer"
without more does not automatically invoke the right to counsel. Etheridge v. State, 903
S.W.2d 1, 18 (Tex. Crim. App. 1994). In this case, Appellant's statement, "What about an
attorney" did not serve to invoke the right to counsel and there was no need to stop the
interview. Issue No. One is overruled. 

 In Issue No. Two, Appellant contends that his confession to Chaides was obtained
involuntarily in violation of Article 38.22 of the Texas Code of Criminal Procedure and the
Fifth and Fourteenth Amendments to the United States Constitution. Tex. Code. Crim.
Proc. Ann. § art. 38.22 (Vernon 2004). He argues that his confession was involuntary
because Chaides assured him that his family would stay together and his wife would not face
criminal charges if he confessed to sexually assaulting his daughter. 

 Since this issue was also in the context of a motion to suppress hearing, the standard
of review is the same as articulated above in Appellant's first issue. The ultimate question
is whether Appellants will was overborne. Creager v. State, 952 S.W.2d 852, 856 (Tex.
Crim. App. 1997). This determination is made based on the totality of the circumstances
which include length of detention; incommunicado or prolonged interrogation; denial of
access of family member; refusal of request to telephone lawyer or family member; and
physical brutality. State v. Terrazas, 970 S.W.2d 157, 162 (Tex. App.--El Paso 1998), aff'd,
4 S.W.3d 720 (Tex. Crim. App. 1999).

 In this case the trial court made findings of fact. It found that Appellant received the
warnings required by Miranda v. Arizona and Article 38.22 before giving his confession. 
The trial court also found that Appellant knowingly, intelligently, and voluntarily waived the
rights articulated in Article 38.22 and did not invoke any of them. It additionally found that
Chaides did not promise reunification with his family nor any leniency for giving a statement. 
These findings are further supported by the record. Appellant drove himself to the police
station. Chaides denied ever making promises in return for statements. Appellant was not
subject to physical brutality and he was allowed to consult with a family member. Because
the trial courts findings are supported by the record, they should not be disturbed on review. 
Ross, 32 S.W.3d at 858. Appellant's Issue No. Two is overruled.

 In Issue No. Three, Appellant avers that the trial court erred by denying him his right
to confrontation. He argues that the trial court failed to permit him to question the victim
about entries to her diaries relating to her sexual activity with persons other than Appellant
in violation of Texas Rules of Evidence 412(b)(2)(C). Specifically, Appellant contends that
her sexual activity with others was pertinent t show motive and bias in that it showed that she
had sexual relations with boys and she concocted the fact of the sexual assaults by her father
to prevent the family from moving away thereby ending those relationships and ending her
activities at school and church. 

 We review a trial court's decision to admit or exclude evidence under an abuse of
discretion standard. Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). 
Under this standard, the trial court's findings of fact are given "almost total deference";
however, we review the trial court's application of the law to these facts de novo. 
Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The trial court's ruling
will be upheld as long as it is within the "zone of reasonable disagreement." Weatherred, 15
S.W.3d at 542. The credibility of a witness may not be attacked with specific instances of
conduct other than conviction of crime. Tex. R. Evid. 608(b). In a prosecution for
aggravated sexual assault, evidence of specific instances of an alleged victim's past sexual
behavior is not admissible, unless such evidence "relates to the motive or bias of the alleged
victim" and the probative value of such evidence outweighs the danger of unfair prejudice.
See Tex. R. Evid. 412(b)(2)(C), (B)(3). 

 Any motive the complainant may have had to concoct a sexual assault charge against
Appellant was well developed by Appellant's counsel at trial, without resort to evidence of
the other alleged sexual liaisons with other boys. Defense counsel established the facts if the
October 15 journal entry-a matter relevant in that the complainant's concept of virginity
became relevant at trial. Appellant was able to fully develop the issue of the family's move
to Albuquerque as a motive for the complainant to lie. Further, Appellant was able to elicit
the fact of her prior sexual conduct on the October 15 entry and was able to advance his
defensive theory that she had lied about her sexual history and was allegedly involved in a
sexual relationship when she made her outcry. Testimony was elicited from the victim that
she had observed Appellant hitting her mother, threatening her mother with an axe, and
blackening her mother's eye. Further, the victim testified that she herself had suffered
various depredations at Appellant's hands, and was still so angry at Appellant that she would
like to hit him. Thus, the complainants possible bias against Appellant was well established. 
We conclude, therefore, that the trial court did not err in excluding evidence of other possible
sexual involvements on the part of the complainant. Appellant's Issue No. Three is
overruled. 

 Having overruled each of Appellant's issues on review, we affirm the judgment of the
trial court.

February 20, 2004

 


 

 RICHARD BARAJAS, Chief Justice

Before Panel No. 2

Barajas, C.J., McClure and Chew, JJ.


(Do Not Publish)